# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

Gladys M. Stovall,

      Plaintiff,

v.                                                          Case No. 17-cv-2412-JWL

Brykan Legends, LLC,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Gladys M. Stovall filed this lawsuit against her former employer alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., as amended by the ADA Amendments Act of 2008 ("ADAAA"); workers' compensation retaliation; and negligent hiring and retention. The court granted summary judgment in favor of defendant on plaintiff's negligent hiring and retention claim and on a portion of plaintiff's ADA discrimination claim. All other claims were tried to a jury in October 2019. The jury returned a verdict in favor of plaintiff on her sexual harassment claim and her claim that defendant failed to accommodate her disability. The jury awarded a total of $100,000 in compensatory damages and $200,000 in punitive damages. Thereafter, the court denied defendant's motion for new trial.

This matter is presently before the court on plaintiff's motion for attorneys' fees and costs (doc. 132) pursuant to the statutory fee provisions of Title VII and the ADA. *See* 42 U.S.C. §§ 2000e-5k & 12205. Specifically, plaintiff seeks fees in the amount of $161,901.25 and costs in

the amount of $5458.50. For the reasons set forth below, the court grants the motion in part and award plaintiff $157,998.75 in fees and $5458.50 in costs.

In Title VII and ADA cases, a district court, in its discretion, may allow the prevailing party a reasonable attorney's fee. 42 U.S.C. §§ 2000e–5(k) & 12205. To obtain attorneys' fees, "a claimant must prove two elements: (1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'" *Flitton v. Primary Residential Mortgage, Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010). In determining the amount of a reasonable fee, the "most useful starting point" is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. (quoting *Hensley v. Eckerhart*, 461 U.S 424, 433 (1983)). Here, defendant does not contest plaintiff's status as a prevailing party and does not challenge the reasonableness of the hourly rates charged by plaintiff's counsel. Defendant challenges only a handful of specific time entries found in the billing records submitted by plaintiff's counsel. The court addresses those objections below.

*Assault and Battery Claim*

Plaintiff's billing records include entries for time spent researching, drafting and editing plaintiff's complaint, which included a claim for assault and battery against individual defendant Vincent Martin, and for time spent preparing and revising a second amended complaint, which also included the claim for assault and battery.[1] Defendant asserts that it is not liable for fees as to the claim against Mr. Martin (who was later voluntarily dismissed from the case) and that the

---

[1] Defendant does not challenge the few entries relating to the first amended complaint.

2

court should apply a one-fifth reduction to these entries (the assault and battery claim was one of five claims set forth in the complaint) because plaintiff's entries do not reflect how much of counsel's time was spent researching, drafting or editing each particular claim. The court rejects this argument.

As an initial matter, the record demonstrates that plaintiff's counsel made no revisions to the assault and battery claim between the initial complaint and the filing of the second amended complaint and, thus, no reduction to the entries associated with the second amended complaint is warranted. The record also demonstrates that the facts underlying the assault and battery claim are the same as those underlying the sexual harassment claim asserted against defendant, such that any time spent researching and drafting the assault and battery claim for the initial complaint was integral to the sexual harassment claim as well. Because the assault and battery claim set forth in the original complaint was intertwined with the sexual harassment claim, no reduction is necessary. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995) (if claims are based on common core of facts, reduction of fees not warranted where some claims unsuccessful); *see also Ulin v. Lovell's Antique Gallery*, 528 Fed. Appx. 748, 751 (9th Cir. 2013) (declining to apportion fees and costs between corporate defendant and individual defendant where claims against both were based on same facts).[2]

*Negligent Hiring and Retention Claim*

---

[2] The court notes that defendant challenges a total of 4.1 hours of time spent on the original complaint. Thus, defendant is seeking a reduction of .82 hours for work done in connection with the assault and battery claim.

3

In March 2018, plaintiff filed a third amended complaint adding a state law claim for negligent hiring and retention. The court granted summary judgment in favor of defendant on this claim in April 2019. Defendant asks the court to reduce the fee request in light of the fact that defendant prevailed on this claim. Specifically, defendant challenges two types of entries—those that expressly reflect tasks relating to the negligent hiring and retention claim and those that defendant identifies as "block billings" warranting a general one-fifth reduction (the negligent hiring and retention claim was one of five claims set forth in the third amended complaint).

Plaintiff's billing records reflect several entries expressly tied to work relating to plaintiff's negligent hiring and retention claim. Defendant asks the court to disallow 11.9 hours spent drafting and revising the complaint to add this claim and responding to defendant's motion to dismiss the claim.[3] Defendant also asks the court to disallow 2.5 hours spent conducting a criminal records check on Mr. Martin. The court declines to do so. Significantly, the court denied the motion to dismiss filed by defendant, which was based solely on the exclusive remedy provision of the Kansas Workers' Compensation Act. Plaintiff, then, should not be denied fees for responding to defendant's unsuccessful motion. Moreover, "litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation." *See Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). The court, then, rejects defendant's argument that it should

---

[3] One entry highlighted by defendant in this category does not expressly refer to the negligent hiring claim but is more appropriately considered in connection with defendant's "block billing" argument. That entry is dated March 16, 2018 and includes 1.7 hours of time spent for "Preparation of notes for Response to Motion for Summary Judgment Motion by Defendant."

4

strike the entries for tasks associated with adding this claim to the complaint and defending it on an unsuccessful motion to dismiss.

That leaves defendant's request that the court apply a one-fifth reduction to all hours spent in connection with plaintiff's summary judgment briefing and in connection with trial preparation that occurred before the court granted summary judgment on the negligent hiring claim. In support of this argument, defendant asserts that plaintiff has engaged in the discouraged practice of "block billing" without separating the tasks on a per-claim basis and that a general reduction is therefore appropriate. Defendant also contends that the negligent hiring claim is entirely distinct from plaintiff's other claims such that a reduction for this unsuccessful claim is appropriate. The court rejects both arguments.

"Block billing" refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc*., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996); *see also Flying J Inc. v. Comdata Network, Inc*., 322 Fed. Appx. 610, 617 (10th Cir. 2009) (unpublished) ("So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took."). None of the entries highlighted by defendant constitute improper block billing. Without exception, the entries enable the court to determine how each timekeeper's hours were allotted to specific tasks such as revising a response to a statement of facts; preparing an initial draft of the plaintiff's motion for summary judgment; making final changes to the response to the defendant's motion for summary judgment; and preparing a trial outline of allegations and corresponding evidentiary support for the same. Most of the entries are for increments of time

that are less than two hours. While there are few entries that divide counsel's time on a per-claim basis, the court would be surprised if counsel in an employment case with multiple claims could easily track his or her time on a per-claim basis. *See Hensley*, 461 U.S. at 435 (In many civil rights cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.").

Defendant also suggests that a reduction is appropriate because the unsuccessful negligent hiring claim is distinct from plaintiff's other claims. In *Hensley*, the Supreme Court held that no fee may be awarded for services on "unsuccessful claims" if those claims are based on different facts and legal theories. 461 U.S. at 434-35. The Court acknowledged, however, that civil rights cases involving truly "unrelated" claims for purposes of the lodestar analysis "are unlikely to arise with great frequency." *Id.* at 435; *M.S. ex rel. J.S. v. Utah Schs. for Deaf & Blind*, 822 F.3d 1128, 1138 (10th Cir. 2016) ("As *Hensley* makes clear, a case involving truly unrelated claims . . . [is] unlikely to arise with great frequency"). Here, although plaintiff's negligent hiring claim rests on a legal theory that is distinct from her successful Title VII sexual harassment claim, both claims involved at least some of the same facts, including Vincent Martin's assault on plaintiff and defendant's knowledge, if any, of his prior conduct in the workplace. The court therefore finds that these claims are interrelated for purposes of *Hensley*. *See Flitton*, 614 F.3d at 1177 (because unsuccessful claims raised by plaintiff "were not distinct in all respects" from successful claims, district court did not abuse discretion by refusing to exclude fees accrued for work on unsuccessful claim); *see Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (applying *Hensley* and finding that the plaintiff's "state claims of assault and battery, outrage, and negligent retention

shared a common core of facts with her Title VII claims, all of which arose from [the defendant's] alleged sexual harassment of [the plaintiff]"); *Taylor v. Republic Servs., Inc*., 2014 WL 325169, at *7 (E.D. Va. Jan. 29, 2014) (plaintiff's sexual harassment and negligent retention claims related for purposes of *Hensley*).

*Golden Rule Letter*

Plaintiff's counsel's billing records reflect 3.3 hours of time spent on tasks relating to a "golden rule" letter that, according to the billing records, was prepared, drafted and revised between September 5, 2018 and September 11, 2018. The records further reflect that plaintiff's counsel reviewed the response received from defendant's counsel on October 2, 2018. Defendant asserts that plaintiff should not be permitted to recover fees associated with these tasks because, in fact, the specific golden rule letter referenced in the billing records was prepared, drafted and revised in August 2018, but no contemporaneous time entries exist for those tasks. As demonstrated by the exhibits submitted by defendant, plaintiff apparently sent the same "golden rule" letter in September 2018 that she had already sent in August 2018 and defendant's response to the September 2018 letter indicated that the letter was duplicative of the letter from August 2018 to which it had already provided a substantive response. In the absence of a reply from plaintiff, the court concludes that plaintiff's September and October 2018 entries relating to the golden rule letter are not contemporaneous records of the time spent on the golden rule letter. The court, then, will strike these entries. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219, 1233-34 (10th Cir. 2000) (party requesting attorneys' fees bears burden of proving the

amount of hours reasonably spent on litigation by submitting meticulous, contemporaneous time records).[4]

*Excessive Trial Prep*

Defendant next challenges as excessive the time spent by plaintiff's counsel meeting with plaintiff in preparation for trial. Counsel's time records indicate that counsel spent 7.2 hours on the Saturday before trial meeting with plaintiff to "work on cross examinations" and spent 8 hours on the Sunday before trial meeting with plaintiff to "work on direct examination." On the morning of trial, counsel spent 3.5 hours with plaintiff preparing plaintiff for her testimony. Defendant asserts that spending a total of 18.7 hours with plaintiff preparing for trial in the days leading up to trial is excessive. The court finds that plaintiff's counsel spent a reasonable amount of time preparing plaintiff for trial in this fact-intensive employment dispute. Moreover, defendant has not suggested that it spent considerably less time preparing its key witness for trial.

*Duplicate Entry*

Defendant highlights one duplicative time entry by lead counsel on the first day of trial. Counsel's time records reflect two entries of 10.90 hours of time for lead counsel on October 21, 2019. The court will reduce the fee request by $3270.00 for this duplicative entry.[5]

---

[4] Specifically, the court will strike $632.50 from the fee request, representing 1.5 hours of time billed at a $75 hourly rate; plus .20 hours of time billed at a $200 hourly rate; plus 1.6 hours of time billed at a $300 hourly rate.

[5] This figure represents 10.90 hours of time billed at a $300 hourly rate.

8

*Compensation for Treating Physician*

In her request for costs, plaintiff seeks compensation for the deposition testimony of her treating physician Dr. Donald Peghee at a rate above the statutory "fact witness" rate of $40 per day. *See* 28 U.S.C. § 1821. Defendant challenges this request, arguing that Dr. Peghee is not entitled to anything more than the fact witness fee. Defendant acknowledges that courts in this district have adopted the position that a treating physician, regardless of whether the physician is designated as an expert, is entitled to his or her reasonable fee for deposition testimony because the testimony of a treating physician necessarily involves scientific knowledge and observations. *See Johnson v. Kraft Foods North Am.*, 2007 WL 734956, at *3 (D. Kan. 2007); *Watson v. Taylor*, 2005 WL 8160685, at *1 (D. Kan. 2005); *Wirtz v. Kansas Farm Bureau Services, Inc.,* 355 F. Supp. 2d 1190, 1211 (D. Kan. 2005). Nonetheless, defendant asserts that Dr. Peghee's testimony was more akin to the testimony of a fact witness and that his testimony in this case was not based on any scientific knowledge or specialized information. But that argument misstates the appropriate analysis that courts in this district have utilized in determining that treating physicians should ordinarily be allowed a reasonable fee beyond the $40 statutory limit. As explained by Judge O'Hara in *Watson v. Taylor*:

> Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care. They often have substantial overhead costs that they incur whether they are treating a patient or testifying about one. Litigators and their clients typically obtain physician testimony by deposition rather than by imposing the additional burdens associated with attendance at trial. They also respect the need to compensate physician witnesses to the extent necessary to cover their overhead costs and to pay them a fee commensurate with their professional standing and special expertise.

2005 WL 8160685, at *1 (quoting *Harvey v. Shultz*, 2000 WL 33170885, at *2 (D. Kan. 2000)). The specific nature of the treating physician's testimony, then, is not necessarily pertinent to the issue of whether the physician is entitled to compensation beyond the fact witness fee. In sum, the court rejects defendant's argument and finds that Dr. Peghee's fee is reasonable and appropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for attorneys' fees and costs (doc. 132) pursuant to the statutory fee provisions of Title VII and the ADA is **granted in part and denied in part** and the court awards plaintiff $157,998.75 in fees and $5458.50 in costs.

**IT IS FURTHER ORDERED BY THE COURT THAT** the clerk of the court shall amend the judgment to reflect this court's award of $157,998.75 in attorneys' fees and $5458.50 in costs.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2020, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge